## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

REANNE SNIDER, on behalf of herself,
individually, and all others similarly situated,

                Plaintiffs,

       v.

WOLFINGTON BODY COMPANY, INC.;
EAGLE WOLFINGTON LEASING
CORPORATION; and RICHARD I.
WOLFINGTON, JR.,

                Defendants.

Case No. 2:16-CV-02843-GJP



FILED

JUN 2 8 2016

MICHAEL E. KUNZ, Clerk
By_____Dep. Clerk

## AMENDED COMPLAINT – CLASS ACTION

### JURISDICTION AND VENUE:

1.     This Honorable Court has jurisdiction over this case under 28 U.S.C. § 1331, and supplemental jurisdiction over any state-law claims under 28 U.S.C. § 1367.

2.     Personal jurisdiction and venue are both proper because Defendants transact, engage in, and regularly conduct business at 30 Pottstown Pike, Route 100 and Pennsylvania Turnpike, Exton, PA 19480, and the unlawful employment practices, out of which the causes of action described herein arose, occurred at that location.

### PARTIES:

3.     Plaintiff, Reanne Snider, is an adult individual residing at 1106 Industrial Avenue, Pottstown, PA 19464, and is a former employee of Defendants, Wolfington Body Company, Inc., and Eagle Wolfington Leasing Corporation.

4.     Defendant, Wolfington Body Company, Inc., was at all times relevant hereto, Plaintiff's employer, with a principal place of business at 30 Pottstown Pike, Route 100 and Pennsylvania Turnpike, Exton, Pennsylvania 19341; a Central Pennsylvania branch located at

Route 11 & 15, New Buffalo, Pennsylvania 17069; parts warehouses at 100 Maryland Drive, Mars, Pennsylvania 16046 and 60 Senn Drive, Chester Springs, Pennsylvania 19425; and a New Jersey branch located at 1315 Route 38, Mount Holly, New Jersey 08060.

5. Defendant, Eagle Wolfington Leasing Corporation, was at all times relevant hereto, Plaintiff's employer, with a principal place of business at 30 Pottstown Pike, Route 100 and Pennsylvania Turnpike, Exton, Pennsylvania 19341; a Central Pennsylvania branch located at Route 11 & 15, New Buffalo, Pennsylvania 17069; parts warehouses at 100 Maryland Drive, Mars, Pennsylvania 16046 and 60 Senn Drive, Chester Springs, Pennsylvania 19425; and a New Jersey branch located at 1315 Route 38, Mount Holly, New Jersey 08060.

6. At all times relevant hereto, Defendants were Plaintiff's joint employer and each Defendant was Plaintiff's co-employer.

7. At all times relevant hereto, Defendants, Eagle Wolfington Leasing Corporation and Wolfington Body Company, Inc., jointly managed employee benefits including leave.

8. There is a significant degree of unity between Defendant, Wolfington Body Company Inc., and Defendant, Eagle Wolfington Leasing Corporation, with respect to hiring/firing decisions, promulgating work rules/assignments, setting conditions of employment, day-to-day supervision, control of employee records, and employee benefits including leave.

9. At all times relevant hereto, Eagle Wolfington Leasing Corporation held itself out to be Plaintiff's employer and should therefore be considered her ostensible or apparent employer. Plaintiff believed Wolfington Body Company, Inc., and its employees to be agents of Eagle Wolfington Leasing Corporation with the authority to create an employment relationship between Plaintiff and Eagle Wolfington Leasing Corporation.

2

10.     At all times relevant hereto, each Corporate Defendant was engaged in commerce, each was in an industry or activity affecting commerce, and each employed fifteen (15) or more employees for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year.

11.     At all times relevant hereto, each Corporate Defendant was engaged in commerce, each was in an industry or activity affecting commerce, and each employed fifty (50) or more employees for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year, specifically at the Exton location where Plaintiff was employed.

12.     Each Corporate Defendant employed fifty (50) or more employees for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year, at the Exton location and within 75 miles at the worksites in Chester Springs, New Buffalo, and Mars, Pennsylvania; and at Mount Holly, New Jersey.

13.     Defendant, Richard I. Wolfington, Jr., is the President, Treasurer, and Vice President of Defendants, Wolfington Body Company, Inc., and Eagle Wolfington Leasing Corporation, and at all times relevant hereto, acted directly or indirectly in the interest of the employer with respect to Reanne Snider.

**CLASS-WIDE ALLEGATIONS:**

14.     Plaintiff asserts class-wide claims of sex and pregnancy discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended by the Pregnancy Discrimination Act of 1978 ("PDA").

15.     Plaintiff also asserts class-wide claims of notice interference and retaliation under the Family and Medical Leave Act ("FMLA").

3

16.     Terminating a pregnant employee like Plaintiff on the day she gave birth has created a widespread reputation of resistance to the idea that Defendants' employees should ever become pregnant.  Discriminatory bias pervades the entire company.

17.     The operation of Defendants' no-maternity-leave policy, combined with Defendants' failure to post/provide FMLA notice, combined with Defendants' lack of a policy prohibiting pregnancy discrimination, together constitute a significant burden on female employees of childbearing age, and doomed them to certain termination if they became pregnant.

18.     Plaintiff seeks to undo the effects of this systemic problem which burdens the lives and careers of hundreds of current or former female employees who have suffered similar notice interference, retaliation, and/or discrimination based on pregnancy, childbirth, or related medical conditions.

19.     Defendants have not provided FMLA notice to a large class of employees at five (5) different worksites in two (2) different states.  The fact that Defendants failed to provide appropriate FMLA notice to such a large class of employees is reason to certify this matter as a class action because it will otherwise be more difficult to locate individuals who are aggrieved because they are not aware of their rights.

20.     As Defendants have flagrantly retaliated against Plaintiff by discharging her on the day she gave birth, and therefore, upon information and belief, Defendants have retaliated against other pregnant female employees, certifying the instant matter as a class action would be appropriate as it will be more difficult to locate individuals aggrieved for fear of reprisal.

21.     High-level personnel including Richard I. Wolfington, Jr., Jim Titus, Ronald Rosati, Becky Risko, and Carolyn Gerlach exercised the discretion at issue against Plaintiff.

4

## COUNT I:
## INDIVIDUAL DISPARATE TREATMENT ON THE BASIS OF SEX AND PREGNANCY IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED BY THE PREGNANCY DISCRIMINATION ACT OF 1978 (Plaintiff, Reanne Snider v. Defendants, Wolfington Body Company, Inc., and Eagle Wolfington Leasing Corporation)

22.     Plaintiff, Reanne Snider, is a female employee who at all times relevant hereto was pregnant.

23.     Plaintiff, Reanne Snider, was hired on or about August 2014 by Defendants, Wolfington Body Company, Inc., and Eagle Wolfington Leasing Corporation, as a Data Entry clerk.

24.     The former Service Advisor for Defendants' Parts and Service Department reports that, on or about September/October 2014,  Defendant "Richard Wolfington, Jr. [male], passed through the service lane, looked over at Reanne, and saw she was pregnant.  Richard Wolfington, Jr., pointed to his belly like he was pregnant . . . Becky [Risko, Defendants' high-level Human Resources Manager, non-pregnant]. . . said to Richard Wolfington, Jr., across from me, 'that was from before she was interviewed' with her back towards" Plaintiff, who was working on a spreadsheet.  This is direct evidence of discriminatory and retaliatory animus.

25.     On or about November/December 2014, Plaintiff requested medical leave because of the impending birth of her daughter and to care for her newborn daughter.

26.     On or about November/December 2014, the Director of Wolfington, Jim Titus (male), and the Service Manager, Ronald Rosati (male), met with Plaintiff and stated that Wolfington did not have a maternity leave policy.

27.     On or about November/December 2014, Titus and Rosati met with Plaintiff and stated that Plaintiff's position was going to be eliminated.

5

28.     On or about December 3, 2014, the Executive Assistant of Human

Resources/Assistant Office Manager, Carolyn Gerlach (non-pregnant), stated that Wolfington

did not have a maternity leave policy.

29.     On or about December 2014/January 2015, Plaintiff was instructed by Rosati,

Titus, or Gerlach that they took Plaintiff's request all the way to Richard I. Wolfington, Jr., and

that Mr. Wolfington himself decided that Reanne Snider would be given no more than 10 days

off. This doomed Plaintiff to certain termination as it is substantially less than the respite

recognized as medically necessary to bear a child.

30.     On or about January 27, 2015, Plaintiff, Reanne Snider, gave birth to her child.

That same date – January 27, 2015 – Defendants issued Plaintiff a termination letter.

31.     Plaintiff's termination letter stated at the top, in the subject line, "RE: Maternity

Leave." This constitutes direct evidence of discriminatory and retaliatory animus.

32.     Plaintiff was discharged on the basis of Defendants' belief that maternity leave is

an inordinate drain on the workplace caused by female employees; that female employees will

prioritize family over work; and/or that new mothers belong home with their newborn children.

33.     However, Defendants overlooked comparable absences in excess of 10 days for

male employees similarly situated as Plaintiff in their ability or inability to work, including:

a.      A male employee who worked in Parts was allowed to take additional days off in

excess of 10 days when his wife had a baby in or around August 2015;

b.      Another male employee whose wife had a baby in or around July 2015 was

allowed to take additional days off in excess of 10 days;

c.      Another male employee informed Defendants from January-August 2015 that he

needed time off for a second part-time job and also family leave to care for his ill father.

6

Defendants told this male employee that they would try to work with him. This male employee took additional personal time for three (3) months over and above the 10 combined sick/personal days, had his time approved by Defendants even though the employee had no time left, Defendants were aware that this employee was taking time off, but Defendants did not request further updates about the reasons for taking time off.

 d. Another male employee took additional days in excess of 10 days for Workers' Compensation due to a work injury to his shoulder.

 e. Another male employee took off for chemotherapy in excess of 10 days from January 2015 through October 2015, which Defendants approved.

 f. Another male employee (Washbay Technician) left for rehab due to a substance abuse problem for a period of time in excess of 10 days, but was allowed to return to his position afterward.

 g. Another male employee slipped on ice exiting a bus and was allowed to take additional days off in excess of 10 days although the injury did *not* even occur on the job.

 h. Another male employee hurt his ankle on the job and was allowed to take off additional days in excess of 10 days in or around June/July 2015.

 i. Another male employee in the Body Shop took additional days off in excess of 10 days for vertigo secondary to diabetes from August 2015 through December 2015.

 34. Defendants had at their discretion a formal Leave of Absence Policy which provided that "each case will be considered individually, taking into account the urgency of the request, your work record, seniority, and ability of your department to carry on its normal functions during your absence." This policy was applied to male and non-pregnant female employees similarly situated in their ability or inability to work as Plaintiff.

7

35.     Defendants also had at their discretion an additional formal Policy entitled "additional unpaid leave," in a separate "Paid Vacation/Time Off (Sick)" Policy. This Policy provided that additional time off was available, and the only requirement was simply that "you must use your vacation/paid time (sick) days before being able to take any unpaid days." This policy was applied to male and non-pregnant female employees similarly situated in their ability or inability to work as Plaintiff.

36.     On or about March 2015, the former Tech Leader (male) told another male employee that there was "some issue" with Plaintiff as "she was only given 2 weeks and was terminated." This is direct evidence of discriminatory and retaliatory animus.

37.     After giving birth, from on or about February through July 2015, Plaintiff continuously called the Main Office and sent requests to be rehired to her position or an equivalent position, but her calls were never returned by Defendants.

38.     Specifically, in April 2015 and also in July 2015, Plaintiff requested to be rehired to her position or an equivalent position and never heard back.

39.     At one point during this time period, from February through July 2015, Defendants told the Plaintiff they had already filled her position. Upon information and belief, the position was filled by a non-pregnant employee.

40.     On or about June 28, 2015, Plaintiff applied for an open position with Defendants as Accounts Payable/Receivable Administrator. Plaintiff never heard back from Defendants. Upon information and belief, the position was filled by a non-pregnant employee.

41.     On or about July 2015, Plaintiff applied to another open position with Defendants in the Main Office, but never heard back from Defendants. Upon information and belief, the position was filled by a non-pregnant employee.

8

42.     On or about September 2015, Plaintiff applied to the position of Title Clerk with Defendants in the Main Office, but never heard back from Defendants. Defendants continue, to this day, to openly seek applicants for the position of Title Clerk.

43.     On or about March 30, 2016, Plaintiff applied for an open position as an Entry Level Technician/Washbay, but never heard back from Defendants. Upon information and belief, the position was filled by a male employee.

44.     On or about March 30, 2016, Plaintiff applied for an open position as a Parts Driver, but never heard back from Defendants. Upon information and belief, the position was filled by a male employee.

45.     At all times relevant hereto, Defendants intentionally and/or recklessly did *not*, and do *not*, have a policy that prohibits discrimination on the basis of pregnancy, childbirth, or related medical conditions, including in their handbook.

46.     Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission on **March** 30, 2016, and received a Notice of Right-to-Sue attached as Exhibit "A." To show the March 30th filing date, Plaintiff hereby attaches her Dual-Filed/Cross-Filed PHRC Charge as Exhibit "B," with the remaining EEOC Charge omitted for its length.

47.     Plaintiff alleges a continuing violation of Title VII and the PDA as in Young v. United Parcel Service, Inc., 575 U.S. ___, 135 S.Ct. 1338 (2015).

**WHEREFORE**, Plaintiff, Reanne Snider, hereby demands judgment in her favor and against Defendants, Wolfington Body Company, Inc., and Eagle Wolfington Leasing Corporation, in an amount in excess of the compulsory arbitration limits of $50,000 including back/front pay, lost earning capacity, back/front seniority, benefits, bonuses, and commissions; compensatory damages for pain and suffering, mental anguish, anxiety, depression, emotional

distress, humiliation, and inconvenience; being forced to live and provide care to her newborn child without any income or health insurance from the employer; losing her vehicle by being unable to make payments; medical expenses related to pregnancy, childbirth, and related medical conditions; penalties for non-payments, late payments, or no shows; punitive damages; together with pre- and post-judgment interest, delay damages, reasonable attorneys' fees, costs of suit; and equitable/injunctive relief requiring reinstatement/promotion, requiring Defendants to rescind their prohibition on maternity leave; adopt and conspicuously post a non-discrimination policy on the basis of pregnancy; provide non-discrimination/anti-harassment training; and post notice of the verdict in this matter at all of Defendants' locations.

## COUNT II:
### SYSTEMIC DISPARATE TREATMENT ON THE BASIS OF SEX AND PREGNANCY IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED BY THE PREGNANCY DISCRIMINATION ACT OF 1978
#### (Plaintiffs, Reanne Snider and the Class v. Defendants, Wolfington Body Company, Inc., and Eagle Wolfington Leasing Corporation)

48.     All of the foregoing paragraphs are hereby incorporated by reference as if the same were more fully set forth herein at length.

49.     Defendants sought to evade their obligations to provide leave for pregnancy, childbirth, and related medical conditions on the basis of Defendants' beliefs that maternity leave is an inordinate drain on the workplace caused by female employees; that female employees will prioritize family over work; and/or that new mothers belong home with their newborn children.

50.     Defendants refused to adopt a non-discrimination policy on the basis of pregnancy including in their handbook, and Defendants' prohibition on "maternity leave" is *not* gender-neutral.

51.     Male and female employees are classified and/or segregated such that, upon information and belief, at all times relevant hereto, there were/are no male employees performing

10

Data Entry positions at the Main Office/Exton, Chester Springs, New Buffalo, Mars, and Mount

Holly, New Jersey worksites. Male employees at these locations are hired in traditionally male

jobs within Parts and Service, including Entry Level Technician/Washbay and Parts Driver, and

are paid substantially more than similarly-situated females hired in traditionally female jobs

within Data Entry.

**WHEREFORE,** Plaintiffs, Reanne Snider and the Class, hereby demand judgment in

their favor and against Defendants, Wolfington Body Company, Inc., and Eagle Wolfington

Leasing Corporation, in an amount in excess of the compulsory arbitration limits of $50,000

including back/front pay, seniority, bonuses, benefits, commissions, raises, lost earning capacity;

compensatory damages; punitive damages; and equitable/injunctive relief requiring Defendants

to reinstate/promote Plaintiff, adopt and enforce a non-discrimination policy on the basis of

pregnancy, and post notice of the verdict in this matter at all of Defendants' locations.

## COUNT III:
## SYSTEMIC DISPARATE IMPACT ON THE BASIS OF SEX AND PREGNANCY IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED BY THE PREGNANCY DISCRIMINATION ACT OF 1978
**(Plaintiffs, Reanne Snider and the Class v. Defendants, Wolfington Body Company, Inc., and Eagle Wolfington Leasing Corporation)**

52.     All of the foregoing paragraphs are hereby incorporated by reference as if the

same were more fully set forth herein at length.

53.     Plaintiff identifies the following specific employment practices, which adversely

affect and have a disparate impact upon pregnant female employees:

    a.     The attendance policy which states that each employee is entitled to a "vacation
allowance" for the "[m]onth of hire to December 31st of year hired" which was 5
days for Jan-Feb, 4 days for Mar-Apr, 3 days for May-June, 2 days for July-
August, and 1 day for Sept-Dec. This is an arbitrary countdown.

b.      The attendance policy which states that "paid time off (sick) allowance" measured from "[t]he month of hire to December 31st of year hired" was 2 days for Jan-June, and 1 day for July-Dec.

c.      The attendance policy which states that the right to vacation does not vest fully until your tenth year (a decade) of employment.

d.      The attendance policy that vacation can only be 5 days after 1 full year;

e.      The attendance policy that vacation can only be 1 day every 10 weeks;

f.      The attendance policy that sick days can only be 5 days after 1 full year;

g.      The attendance policy that sick days can only be 1 day for every 10 weeks;

h.      The attendance policy that sick days can only be for 10 days each full year; and

i.      The attendance policy that employees may only take 10 combined sick/vacation/personal days per year.

54.      Pregnant female employees are doomed under these policies which were created by men for the traditionally all-male workforce at Defendants' facilities.

55.      The above policies had a disparate impact on the basis of sex and pregnancy, as they adversely affected employees on the basis of sex and pregnancy and are not job-related or consistent with business necessity.

**WHEREFORE,** Plaintiffs, Reanne Snider and the Class, hereby demand judgment in their favor and against Defendants, Wolfington Body Company, Inc., and Eagle Wolfington Leasing Corporation, in an amount in excess of the compulsory arbitration limits of $50,000, including back/front pay, seniority, bonuses, benefits, commissions, raises, and lost earning capacity; compensatory damages; and equitable/injunctive relief requiring Defendants to revise their attendance policies and procedures.

**COUNT IV:**
**RETALIATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF**
**1964, AS AMENDED BY THE PREGNANCY DISCRIMINATION ACT OF 1978**

**(Plaintiff, Reanne Snider v. Defendants, Wolfington Body Company, Inc., and Eagle Wolfington Leasing Corporation)**

56.     All of the foregoing paragraphs are hereby incorporated by reference as if the same were more fully set forth herein at length.

57.     Defendants discharged Plaintiff on the day she gave birth, failed to rehire her, and failed to hire her to five-plus open positions to which she applied, all because Plaintiff previously opposed the no-maternity-leave policy which she reasonably believed was an unlawful discriminatory practice.

58.     Defendants believe that they may retaliate with impunity against pregnant employees in the workplace simply because they might not be "eligible" employees under the FMLA.

**WHEREFORE,** Plaintiffs, Reanne Snider and the Class, hereby demand judgment in their favor and against Defendants, Wolfington Body Company, Inc., and Eagle Wolfington Leasing Corporation, in an amount in excess of the compulsory arbitration limits of $50,000, including all damages claimed in Count I; back/front pay; compensatory damages; punitive damages; reasonable attorneys' fees; costs of suit; and equitable/injunctive relief requiring reinstatement/promotion, requiring Defendants to adopt and enforce an anti-retaliation policy under Title VII/PDA; to provide anti-retaliation training; and to post notice of the verdict in this action at all of Defendants' locations.

## COUNT V:
## AIDING AND ABETTING IN VIOLATION OF THE PENNSYLVANIA HUMAN RELATIONS ACT ("PHRA")
**(Plaintiff, Reanne Snider v. Defendant, Richard I. Wolfington, Jr.)**

59.     All of the foregoing paragraphs are hereby incorporated by reference as if the same were more fully set forth herein at length.

60.     Individual Defendant, Richard I. Wolfington, Jr., was at all times relevant hereto a

manager who aided and abetted the unlawful employment practices described more fully above,

including discharge, failure-to-hire, and failure-to-rehire (a continuing violation). This

Individual Defendant is personally liable.

**WHEREFORE,** Plaintiff, Reanne Snider, hereby demands judgment in her favor and

against Defendant, Richard I. Wolfington, Jr., in an amount in excess of the compulsory

arbitration limits of $50,000, including all damages allowable by law under the PHRA.

## COUNT VI:
## FAMILY AND MEDICAL LEAVE ACT
## RETALIATION
### (Plaintiffs, Reanne Snider and the Class v. Defendants, Wolfington Body Company, Inc., Eagle Wolfington Leasing Corporation, and Richard I. Wolfington, Jr.)

61.     All of the foregoing paragraphs are hereby incorporated by reference as if the

same were more fully set forth herein at length.

62.     Defendants used the Plaintiff's request for maternity leave as a negative factor in

her discharge on January 27, 2015, which is the date Defendants terminated Plaintiff and the

very same date that Plaintiff gave birth to her child.

63.     Defendants used the Plaintiff's attempts to exercise her rights under the FMLA as

a negative factor in failing to rehire her to her position or hire her to an equivalent position.

64.     Defendants continuously and systematically failed or refused to hire Plaintiff to

Data Entry Clerk, Accounts Receivable Administrator, Title Clerk, Entry Level

Technician/Washbay, and Parts Driver because Plaintiff previously attempted to exercise her

entitlement to FMLA leave.

14

65. Defendants discharged Plaintiff on the day she gave birth, failed to rehire her, and failed to hire her to five-plus open positions, because she opposed the no-maternity-leave policy which she reasonably believed was unlawful under the FMLA.

66. Defendants wilfully believe that they may retaliate with impunity against pregnant employees in the workplace who inquire about the FMLA, and who oppose the no-maternity-leave policy, simply because the employee might not be "eligible" under the FMLA. However, 29 CFR 825.220 expressly encompasses employees who attempt to exercise rights, and also any individuals (even non-employees) who oppose practices reasonably believed to be unlawful under the FMLA.

**WHEREFORE**, Plaintiffs, Reanne Snider and the Class, hereby demand judgment in their favor and against Defendants, Wolfington Body Company, Inc., Eagle Wolfington Leasing Corporation, and Richard I. Wolfington, Jr., in an amount in excess of the compulsory arbitration limits of $50,000 including back pay; front pay; lost earning capacity; back/front seniority, benefits, bonuses, commissions, overtime, shift differentials, any raises Plaintiff would have received, any and all amounts of back/front pay in the form of health insurance, 401K, paid time-off, and life insurance; other actual monetary losses including costs of being forced to live and provide care to her newborn child without any income or health insurance from the employer; losing her vehicle by being unable to make payments; medical expenses related to pregnancy, childbirth, and related medical conditions; penalties for non-payments, late payments, or no shows; any incidental costs or expenses associated with incurring these events without any income from employment, up to a sum equal to 12 weeks of wages or salary for Plaintiff; together with reasonable attorneys' fees; interest under 29 U.S.C. § 2617(a)(1)(A)(ii); expert witness fees; costs of suit; liquidated damages under the FMLA pursuant to 29 U.S.C. §

15

2617(a)(1)(A)(iii), and equitable relief requiring Defendants to rescind their prohibition on

maternity leave; adopt and enforce an FMLA policy; employ, reinstate, and promote Plaintiff

pursuant to 29 U.S.C. § 2617(a)(1)(B); and post notice of the verdict in this action at all of

Defendants' locations.

## COUNT VII:
## FAMILY AND MEDICAL LEAVE ACT
## INTERFERENCE
### (Plaintiffs, Reanne Snider and the Class v. Defendants, Wolfington Body Company, Inc., Eagle Wolfington Leasing Corporation, and Richard I. Wolfington, Jr.)

67.     All of the foregoing paragraphs are hereby incorporated by reference as if the

same were more fully set forth herein at length.

68.     Plaintiff informed her employer that she was pregnant, at the time she was hired,

and was never given notice of her FMLA rights in accordance with the designation notice

requirements of 29 C.F.R. § 825.300(d), or the individualized expectation and obligation

requirements under 29 C.F.R. § 825.300(c).

69.     Plaintiff was *never* given notice of any requirement that she work for the

employer for 12 months, and for more than 1,250 hours, before becoming eligible for FMLA

leave.

70.     Defendants discharged Plaintiff, failed to rehire her, and failed to hire her to five-

plus open positions to which she applied in order to evade their obligations to provide leave for

pregnancy, childbirth, and related medical conditions on the basis of Defendants' beliefs that

maternity leave is an inordinate drain on the workplace caused by female employees; that female

employees will prioritize family over work; and/or that new mothers belong home with their

newborn children.

71.     This conduct against a pregnant woman, under these circumstances, is sufficient to constitute notice interference for which the doctrine of *equitable estoppel* applies to estop Defendants, and/or Defense Counsel, from asserting and/or defending this case on the basis that Plaintiff was not an "eligible" employee under the FMLA.

72.     Defendants' interference caused prejudice by dooming Plaintiff to certain termination, rendering her unable to exercise her right to leave in a meaningful way, and denying her the ability to make informed decisions about and structure her pregnancy, childbirth, respite, and return to work.

73.     Plaintiff was prejudiced by Defendants' notice interference in that Plaintiff would have never taken the job had she known that she was not "eligible" and would be discharged on the day she gave birth.

**WHEREFORE,** Plaintiffs, Reanne Snider and the Class, hereby demands judgment in her favor and against Defendants, Wolfington Body Company, Inc., Eagle Wolfington Leasing Corporation, and Richard I. Wolfington, in an amount in excess of the compulsory arbitration limits of $50,000, including all damages alleged in Count VI.

**COUNT VIII:**
## WRONGFUL DISCHARGE IN VIOLATION OF THE PUBLIC POLICY OF THE COMMONWEALTH OF PENNSYLVANIA (IN THE ALTERNATIVE) (Plaintiff, Reanne Snider v. Defendants, Wolfington Body Company, Inc., and Eagle Wolfington Leasing Corporation)

74.     All of the foregoing paragraphs are hereby incorporated by reference as if the same were more fully set forth herein at length.

75.     Defendants wrongfully discharged Plaintiff in violation of the clear public policy of the Commonwealth of Pennsylvania against discharging a pregnant mother precisely to avoid providing her maternity leave or respite following childbirth.

17

76. Defendants have suggested that Plaintiff's claim for discriminatory discharge might be foreclosed by the applicable statute of limitations even though Plaintiff filed with the EEOC for a continuing violation on March 30, 2016. As Defendants are suggesting Plaintiff is foreclosed from bringing a Title VII/PDA claim for her discharge, Plaintiff hereby asserts a wrongful discharge claim for pregnancy discrimination pursuant to Carlson v. Community Ambulance Services, 824 A.2d 1228, 1233 (Pa. Super. 2003).

**WHEREFORE**, Plaintiff, Reanne Snider, hereby demands judgment in her favor and against Defendants, Wolfington Body Company, Inc., and Eagle Wolfington Leasing Corporation, in an amount in excess of the compulsory arbitration limits of $50,000.

## COUNT IX:
## FAILURE TO HIRE IN VIOLATION OF THE PUBLIC POLICY OF THE COMMONWEALTH OF PENNSYLVANIA (IN THE ALTERNATIVE)
### (Plaintiff, Reanne Snider, v. Defendants, Wolfington Body Company, Inc., and Eagle Wolfington Leasing Corporation)

77. All of the foregoing paragraphs are hereby incorporated by reference as if the same were more fully set forth herein at length.

78. Defendants refused to rehire Plaintiff to her position or an equivalent position from January 2015 through June 3, 2015 despite repeated requests.

79. Defendants have suggested that Plaintiff's claim for failure-to-hire/rehire from January 2015 through June 3, 2015 might be foreclosed by the applicable statute of limitations even though Plaintiff filed with the EEOC for a continuing violation on March 30, 2016. As Defendants are suggesting Plaintiff is foreclosed from bringing a Title VII/PDA claim for failure-to-hire/rehire from January 2015 through June 3, 2015, Plaintiff hereby asserts a wrongful discharge claim for pregnancy discrimination pursuant to Carlson v. Community Ambulance Services, 824 A.2d 1228, 1233 (Pa. Super. 2003).

18

**WHEREFORE**, Plaintiff, Reanne Snider, hereby demands judgment in her favor and against Defendants, Wolfington Body Company, Inc., and Eagle Wolfington Leasing Corporation, in an amount in excess of the compulsory arbitration limits of $50,000.

## COUNT X:
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
**(Plaintiff, Reanne Snider v. Defendants, Wolfington Body Company, Inc., and Eagle Wolfington Leasing Corporation)**

80.     All of the foregoing paragraphs are hereby incorporated by reference as if the same were more fully set forth herein at length.

81.     At all times relevant hereto, Defendants and their agents, servants, employees, ostensible agents, and contractors, by extreme and outrageous conduct, intentionally and/or recklessly caused Plaintiff severe emotional distress.

82.     Defendants and their agents, servants, employees, ostensible agents, and contractors acted with the intent to discriminate and retaliate against Plaintiff because of her pregnancy, childbirth, and related medical conditions, by terminating her on the day she gave birth.  Therefore, Defendants and their agents, servants, employees, ostensible agents, and contractors knew or should have known that Plaintiff's emotional distress was the likely result of their conduct.

83.     The extreme and outrageous conduct described above was a factual and proximate/legal cause of Plaintiff's severe emotional distress.

84.     The actions described herein were, at all times relevant hereto, atrocious, utterly intolerable, and beyond all possible bounds of decency in a civilized society.  The severity of the above conduct was such that no pregnant female should be expected to endure it.

85.     Defendants are vicariously liable for the actions of their agents, servants, employees, ostensible agents, and contractors, for this intentional tort, as they acted at all times within the scope of employment.

86.     Alternatively, at all times relevant hereto, Defendants' agents, servants, employees, ostensible agents, and contractors deviated from, breached, and were not operating according to the rules of the employer, but acted with an express and specific intent to harm Plaintiff for reasons purely associated with her pregnancy, childbirth, and related medical conditions.

**WHEREFORE**, Plaintiff, Reanne Snider, hereby demands judgment in her favor and against Defendants, Wolfington Body Company, Inc., and Eagle Wolfington Leasing Corporation, in an amount in excess of the compulsory arbitration limits of $50,000 including damages for lost wages, lost future earnings, lost earning capacity, emotional distress, depression, anxiety, inconvenience, mental anguish, and humiliation, as well as interest, delay damages, reasonable attorneys' fees, costs of suit, and punitive damages.

## COUNT XI:
## NEGLIGENT MISREPRESENTATION
### (Plaintiff, Reanne Snider v. Defendants, Wolfington Body Company, Inc., and Eagle Wolfington Leasing Corporation)

87.     All of the foregoing paragraphs are hereby incorporated by reference as if the same were more fully set forth herein at length.

88.     At the time Plaintiff was hired, Defendants had a duty to disclose if she was eligible for medical leave, and when she would become eligible for medical leave.

89.     At the time Plaintiff was hired, upon information and belief, Defendants knew or should have known that Plaintiff was pregnant.

90. At the time Plaintiff was hired, on or about August 2014, in the Main Office, the Head of Administration for the Service Manager, Kelly Harper, did not obtain, disclose, and/or communicate necessary information to Plaintiff that she was ineligible for medical leave nor when Plaintiff would become eligible for medical leave.

91. Kelly Harper actively concealed this information and knew or should have known of the falsity of her concealment.

92. Plaintiff justifiably and detrimentally relied on the fact that Defendants knew or should have known of her pregnancy, represented that she was eligible for employment, and affirmatively selected Plaintiff for employment.

93. Alternatively, Defendants affirmatively represented in the employee handbook that they did not discriminate on the basis of sex, and Plaintiff justifiably and detrimentally relied on this.

94. Defendants further acted willfully, wantonly, and recklessly in that each and every day that Plaintiff came to work, for nine months, she grew more and more conspicuously and appreciably pregnant, but Defendants recklessly failed to disclose and actively concealed the fact that Plaintiff was not eligible for medical leave and was doomed to certain termination. This constitutes appreciation of the risk of harm to Plaintiff and reckless indifference to that harm.

95. Defendants withheld information that was material in that this information would have permitted Plaintiff to structure her pregnancy, childbirth, respite, and return to work properly.

96. Alternatively, Defendants induced Plaintiff into accepting employment and suffered her to work. The information withheld and/or concealed from Plaintiff was material in that Plaintiff would not have taken a job with Defendants had she known this information.

21

97.     Defendants are vicariously liable for the negligent acts and omissions of Kelly Harper as she acted, at all times relevant hereto, within the course and scope of her employment.

**WHEREFORE**, Plaintiff, Reanne Snider, hereby demands judgment in her favor and against Defendants, Wolfington Body Company, Inc., and Eagle Wolfington Leasing Corporation, in an amount in excess of the compulsory arbitration limits of $50,000 including lost wages, seniority, benefits, bonuses, commissions, overtime, shift differentials, and raises Plaintiff would have received; health insurance, 401K, paid time-off, and life insurance; lost earning capacity; compensatory damages including damages for emotional distress, depression, anxiety, inconvenience, mental anguish, and humiliation; for being forced to live without any income or health insurance from the employer as a single mother of a newborn; costs of providing care to her newborn child without any income or health insurance from the employer; medical expenses related to pregnancy, childbirth, and related medical conditions; losing her vehicle after being unable to make payments; penalties for non-payments, late payments, or no-shows; reasonable attorneys' fees, interest, costs of suit, and punitive damages.

## JURY DEMAND

Plaintiff, Reanne Snider, hereby demands a trial by jury consisting of eight (8) members.

Respectfully submitted,

**POST & POST LLC**

DATED: 6/28/16          BY: _____

JUSTIN F. ROBINETTE, ESQUIRE
Supreme Court I.D. No. 319829
200 Berwyn Park, Suite 102
920 Cassatt Road
Berwyn, PA 19312

22

Tel:  (610) 240-9180
Fax:  (610) 240-9185
E-mail:  jrobinette@postandpost.com
*Attorney for Plaintiffs, Reanne Snider and*
*the Putative Class*

# EXHIBIT "A"

EEOC Form 161-B (11/09)

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

| To: | Reanne Snider<br>1106 Industrial Avenue<br>Pottstown, PA 19464 | From: | Philadelphia District Office<br>801 Market Street<br>Suite 1300<br>Philadelphia, PA 19107 |
|---|---|---|---|

| | *On behalf of person(s) aggrieved whose identity is*<br>*CONFIDENTIAL (29 CFR §1601.7(a))* |
|---|---|

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **530-2016-02443** | **Legal Unit,**<br>**Legal Technician** | **(215) 440-2828** |

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

- [ ] More than 180 days have passed since the filing of this charge.

- [X] Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

- [X] The EEOC is terminating its processing of this charge.

- [ ] The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

- [ ] The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court WITHIN 90 DAYS** of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

- [ ] The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

Spencer H. Lewis, Jr.,
**District Director**

6/13/16
*(Date Mailed)*

Enclosures(s)

cc: | David Fitzgerald, Executive VP<br>**WOLFINGTON BODY CO INC**<br>P. O. Box 218, 30 Pottstown Pike<br>Chester Springs, PA 19425 | Justin F. Robinette, Esq.<br>**POST & POST**<br>200 Berwyn Park, Suite 102<br>Berwyn, PA 19312 |

# EXHIBIT "B"

## Information For Complainants & Election Option
## To Dual File With The
## Pennsylvania Human Relations Commission

_____Reanne Snider_____ v. _Wolfington Body Company, Inc./Eagle_____
Wolfington Leasing Corporation

EEOC No. _____

You have the right to file this charge of discrimination with the Pennsylvania Human Relations Commission (PHCR) under the Pennsylvania Human Relations Act. Filing your charge with the PHRC protects your state rights, especially since there may be circumstances in which state and federal laws and procedures vary in manner which could affect the outcome of your case.

Complaints filed with PHRC must be filed within 180 days of the act(s) which you believe are unlawful discrimination. If PHRC determines that your PHRC complaint is untimely, it will be dismissed.

If you want your charged filed with PHRC, including this form as part of your EEOC charge, with your signature under the verification below, will constitute filing with PHRC. You have chosen EEOC to investigate your complaint, so PHRC will not investigate it and, in most cases, will accept EEOC's finding. If you disagree with PHRC's adoption of EEOC's finding, you will have the chance to file a request for preliminary hearing with PHRC

Since you have chosen to file you charge first with EEOC, making it the primary investigatory agency, the Respondent will not be required to file an answer with PHRC, and no other action with PHRC is required by either party, unless/until otherwise notified by PHRC.

If your case is still pending with PHRC after one year of filing with PHRC, you have the right to file your complaint in state court. PHRC will inform you of these rights and obligations at that time.

### [Sign and date appropriate request below]

I want my charge filed with PHRC. I hereby incorporate this form and the verification below into the attached EEOC complaint form and file it as my PHRC complaint. I request EEOC to transmit it to PHRC.

*I understand that false statements in this complaint are made subject to the penalties of 18 Pa.C.S. §4909, relating to unsworn falsification to authorities.*

→    _____ / 3/29/16
Signature and Date

*I do not want my charge dual filed with PHRC.*

_____ / _____
Signature and Date

RECEIVED 16 MAR 30 PM 1:11 EEOC PHILADELPHIA DISTRICT OFFICE

## CERTIFICATE OF SERVICE

I, JUSTIN F. ROBINETTE, hereby certify that on the date below, the Amended Complaint of Plaintiff, Reanne Snider, was filed electronically and is available for viewing and downloading from the ECF system, and was also served via U.S. First Class Mail on the following parties:

George B. Randolph, Esquire
David L. Black, Esquire
Riley Riper Hollin & Colagreco
717 Constitution Drive
Exton, PA 19341

*Attorneys for Defendants, Wolfington Body Company, Inc., and
Eagle Wolfington Leasing Corporation*

Frederick G. Sandstrom, Esquire
One Logan Square
130 North 18th Street
Philadelphia, PA 19103

*Attorney for Defendants, Wolfington Body Company, Inc., and
Eagle Wolfington Leasing Corporation*

Respectfully submitted,

**POST & POST LLC**

DATED: JUNE 28, 2016                    BY: _____

JUSTIN F. ROBINETTE, ESQUIRE
Supreme Court I.D. Number 319829
920 Cassatt Road
200 Berwyn Park, Suite 102
Berwyn, PA 19312
(610) 240-9180
jrobinette@postandpost.com
*Attorney for Plaintiffs, Reanne Snider
and the Putative Class*