**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

REANNE SNIDER,

*Plaintiff*,

v.

CIVIL ACTION
No. 16-02843

WOLFINGTON BODY COMPANY, INC.;
EAGLE WOLFINGTON LEASING
CORPORATION; and RICHARD I.
WOLFINGTON, JR.,

*Defendants*.

PAPPERT, J.                                                              October 17, 2016

<u>**MEMORANDUM**</u>

Reanne Snider was in the early stages of her pregnancy at the time the Defendants hired her. When she took more than the allotted ten days of leave to have and care for her child, her employment was terminated. Her claims do not concern that termination. Snider contends instead that the Defendants subsequently refused to rehire her because of her prior pregnancy and the chance she might become pregnant again. She alleges violations of Title VII of the Civil Rights Act as amended by the Pregnancy Discrimination Act, the Family and Medical Leave Act and Pennsylvania common law. Before the Court is Defendants' September 14, 2016 Motion to Dismiss Snider's Second Amended Complaint. For the reasons discussed below, the Court denies the motion with respect to Count I and grants the motion with respect to Counts II through VIII.

1

## I.

Defendants Wolfington Body Company, Eagle Wolfington Leasing Corporation and Richard Wolfington hired Snider as a clerk in August 2014.[1]  (2d Am. Compl. ¶ 4.)  Richard Wolfington is the president, treasurer and vice president of both companies.  (*Id.* ¶ 14.)  When she was hired, Snider was two to three months pregnant, but not "showing."  (*Id.* ¶ 15.)  Snider alleges that when she began her employment she told Kelly Harper, Defendants' head of administration, that she was pregnant.  Harper responded by saying "Oh, OK."  (*Id.*  ¶ 54.)

Around November or December 2014 Snider requested medical leave to give birth and care for her newborn, (*id.* ¶ 17), but Defendants told her that they did not have a maternity leave policy, (*id.* ¶ 18).  Snider alleges that during the same time period Defendants also told her that her position was going to be eliminated.  (*Id.* ¶ 19.)  On December 3, 2014 Snider met with the executive assistant of human resources and assistant office manager who also told her Defendants did not have a maternity leave policy.  (*Id.*)  In December 2014 or January 2015 Defendants told Snider that she would be allowed to take up to ten days of leave.  (*Id.* ¶ 21.)[2]  Snider gave birth on January 27, 2015.  (*Id.* ¶ 22.)  She received a letter from Defendants dated that same day.  (*Id.*)  Snider alleges that this was a "termination letter" and that she was therefore fired on January 27, 2015.  (*Id.* ¶ 22.)[3]  Snider contends that she was let go because of her

---

[1]      Defendants claim that only Wolfington Body Company was Snider's employer.

[2]      Snider's request for maternity leave went "all the way to" Richard Wolfington.  (*Id.* ¶ 21.)

[3]      Snider did not attach this letter to any of her complaints.  After Defendants pointed this out in their Motion to Dismiss, Snider attached the letter to her Response.  *See* (ECF No. 24, Ex. A.)  "In deciding motions under Rule 12(b)(6), courts may consider documents integral to or explicitly relied upon in the complaint or any undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document."  *In re Asbestos Prods. Liab. Litig. (No. VI)*, 822 F.3d 125, 133 (3d Cir. 2016) (internal quotations and citations omitted).  The letter is integral to Snider's allegations and she explicitly relied on it in her complaint.  Snider's counsel acknowledged at oral argument that the letter is integral to the complaint.  (Tr. of Oral Arg. 28:22–28:24.)

pregnancy, (*id.* ¶ 24), since Defendants allowed non-pregnant employees to take absences longer than ten days, (*id.* ¶ 25).[4]

From February to June of 2015, Snider contends that she repeatedly sent requests to Defendants to be rehired to her position or an equivalent position within the company.  (*Id.* ¶ 30.) Snider declares that "upon information and belief," all positions were filled by a "non-pregnant" employee.  (*Id.* ¶¶ 30–37.)  Snider claims that Defendants did not have a policy prohibiting discrimination on the basis of pregnancy, (*id.* ¶ 42), did not have an FMLA policy, (*id.* ¶ 45) and did not post or provide notice of FMLA rights, (*id.*).  Snider alleges that her request for maternity leave was an "attempt to exercise her rights under the FMLA" and that she was fired in part for this action.  (*Id.* ¶ 58.)  Snider filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on March 30, 2016.  (*Id.* ¶ 39.)

Snider filed her first complaint in the Chester County Court of Common Pleas and Defendants removed the case on June 9, 2016.  (ECF No. 1.)  Defendants' filed their first Motion to Dismiss on June 14, 2016.  (ECF No. 4.)  In response, Snider filed her First Amended Complaint on June 28, 2016.  (ECF No. 8.)  Defendants filed their second Motion to Dismiss on July 29, 2016.  (ECF No. 13.)  Snider filed her response and—instead of moving for leave to amend her complaint again—attached to her response a "Praecipe to Supplement and Attach." (ECF No. 16.)  The "Praecipe" was another purported amended complaint.  The Court allowed the Praecipe to constitute a Second Amended Complaint.  (*Id.*)

Snider now brings eight claims: (1) individual disparate treatment, (2) systemic disparate treatment, (3) systemic disparate impact and (4) retaliation under Title VII and the PDA; (5)

---

[4]      Snider also contradictorily alleges that she was on "maternity leave" from February 2015 until June/July 2015 and then again from June 2015 to August 2015 when she found another job.  (*Id.* ¶ 28.)  At oral argument, however, Snider's Counsel acknowledged that Snider was fired and not on maternity leave.  (Tr. of Oral Arg. 44:22– 48:10.)

retaliation and (6) interference under the FMLA; and (7) negligent misrepresentation and (8) wrongful termination under Pennsylvania common law.

## II.

To survive a motion to dismiss under Rule 12(b)(6), a complaint must provide "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (citation omitted). While a complaint need not include detailed facts, it must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).

*Twombly* and *Iqbal* require the Court to take three steps to determine whether the Second Amended Complaint will survive Defendants' motion to dismiss. *See Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016). First, it must "take note of the elements the plaintiff must plead to state a claim." *Id.* (quoting *Iqbal*, 556 U.S. at 675). Next, it must identify the allegations that are no more than legal conclusions and thus "not entitled to the assumption of truth." *Id.* (quoting *Iqbal*, 556 U.S. at 679). Finally, where the complaint includes well-pleaded factual allegations, the Court "should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* (quoting *Iqbal*, 556 U.S. at 679).

This "presumption of truth attaches only to those allegations for which there is sufficient factual matter to render them plausible on their face." *Schuchardt v. President of the United States*, ___ F.3d ___, No. 15-3491, 2016 WL 5799656, at *8 (3d Cir. Oct. 5, 2016) (internal quotation and citation omitted). "Conclusory assertions of fact and legal conclusions are not

entitled to the same presumption." *Id.* This plausibility determination is a "context-specific task

that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

(quoting *Connelly*, 809 F.3d at 786–87).

This plausibility standard, however, "does not impose a heightened pleading

requirement" and does not require a plaintiff to plead specific facts. *Id.* In other words, "courts

cannot inject evidentiary issues into the plausibility determination." *Id.* The Third Circuit has

also made it clear that "at least for purposes of pleading sufficiency, a complaint need not

establish a *prima facie* case in order to survive a motion to dismiss" because a "prima facie case

is an evidentiary standard, not a pleading requirement and hence is not proper measure of

whether a complaint fails to state a claim." *Connelly*, 809 F.3d at 789 (internal quotations and

citations omitted). Instead, a plaintiff should plead "enough facts to raise a reasonable

expectation that discovery will reveal evidence of the necessary elements." *Id.* (quoting *Phillips

v. Cty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008).

### III.

Snider's First Amended Complaint alleged that Defendants wrongfully terminated her in

violation of Title VII and the PDA. Before a plaintiff seeks relief under Title VII, however, she

must first exhaust her administrative remedies by filing a charge with the EEOC. Snider did not

file a charge with the EEOC until March 30, 2016, meaning any cause of action premised on acts

occurring on or before June 4, 2015 are barred by statute.[5] *See* 42 U.S.C. § 2000e-5(e)(1) (claim

must be filed with EEOC within 300 days of alleged unlawful employment practice); *see also

Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 165 (3d Cir. 2013). Thus, Snider's claims

relating to her termination, which occurred in January 2015, are time barred.

---

[5]      In her filings, Snider uses the date June 3, 2015 while Defendants use the date June 4, 2015. The difference
is immaterial.

Recognizing this fact and prior to amending her complaint for the second time, Snider withdrew all claims premised on acts occurring on or before June 3, 2015. *See* (ECF No. 15, at 1–2; ECF No. 24, at 15). In their place, Snider now argues that Defendants *failed to rehire* her because of her prior pregnancy and that at least some of these failures to rehire occurred after June 3, 2015. This core allegation makes up four counts of her complaint: (1) individual disparate treatment on the basis of sex and pregnancy; (2) systemic disparate treatment on the basis of sex and pregnancy; (3) systemic disparate impact on the basis of sex and pregnancy; and (4) retaliation under Title VII.

To establish the elements of a pregnancy discrimination claim, a plaintiff must show that: "(1) she was pregnant and that her employer knew of the pregnancy; (2) she was qualified for her position; (3) she suffered an adverse employment action; and (4) there is a nexus between her pregnancy and the adverse employment action." *Laverty v. Drexel Univ.*, 14-5511, 2016 WL 245307, at *6 (E.D. Pa. Jan. 21, 2016) (citing *Doe v. C.A.R.S. Prot. Plus, Inc.*, 527 F.3d 358, 364 (3d Cir. 2008)). A woman need not be physically pregnant at the time of the alleged discrimination to state such a claim. *See Kocak v. Cmty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005) ("Whether one is or is not pregnant at the time does not control whether one can allege discrimination under the [PDA].); *see also Miles v. Dell, Inc.*, 429 F.3d 480, 491 (4th Cir. 2002) (finding that a jury could conclude there was a causal connection between pregnancy and termination despite a year gap between the two).

Generally a PDA plaintiff's membership in the protected class is "obvious" where the employee "suffered the adverse employment action during pregnancy, maternity leave, or shortly after returning to work." *Solomen v. Redwood Advisory Co.*, 183 F. Supp. 2d 748, 754 (E.D. Pa. 2002). While "some effects of pregnancy linger beyond the act of giving birth, at some point the

6

female employee is no longer 'affected by pregnancy, childbirth, or related medical conditions,' for the purposes of the PDA." *Id.* at 753 (quoting 42 U.S.C. § 2000e(k)).

When "the employee is not pregnant at or around the time that she suffers the alleged adverse employment action, her membership in the protected class is less clear" and such a plaintiff "has some additional burden in making out a prima facie case." *Id.* "Such a showing might consist of evidence that harassment or discriminatory statements by plaintiff's supervisors began during her pregnancy or maternity leave and continued with some regularity until the adverse employment action occurred." *Id.* "[A] plaintiff who was not pregnant at or near the time she was terminated must demonstrate that the effects of her pregnancy continued to exist at the time she was terminated, either in actual fact or in the thoughts and actions of those responsible for firing her." *Id.*; *see also Saleski-Shingara v. VNA Health Systems*, No. 14-cv-00085, 2014 WL 5702928, at *8 (E.D. Pa. Nov. 5, 2014).

## A.

Count I is an individual disparate treatment claim under Title VII. Title VII forbids employers from discriminating against any individual because of race, color, religion, sex or national origin. *See* 42 U.S.C. § 2000e-2(a)(1). The PDA amended Title VII in 1978. "Rather than introducing new substantive provisions protecting the rights of pregnant women, the PDA brought discrimination on the basis of pregnancy within the existing statutory framework prohibiting sex-based discrimination." *Solomen*, 183 F. Supp. 2d at 752 (quoting *Armstrong v. Flowers Hosp., Inc.*, 33 F.3d 1308, 1312 (11th Cir. 1994)).

"A Title VII plaintiff may make a claim for discrimination under either the pretext theory set forth in [*McConnell*] or the mixed-motive theory set forth in [*Price Waterhouse*], under which a plaintiff may show that an employment decision was made based on both legitimate and

illegitimate reasons." *Connelly*, 809 F.3d at 788 (internal quotations and citations omitted).  At the motion to dismiss stage, however, a plaintiff need not specify which theory she is pursuing. Thus "for purposes of noting the elements [Snider] must plead to state a disparate treatment claim, [the Court] take[s] it as given that she may advance either a mixed-motive or a pretext theory." *Id.*  Plaintiff should plead "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary elements." *Id.*

Again, the adverse employment action of which Snider complains is *not* her termination (which was time barred), but is instead the alleged failures to hire (or rehire) her that occurred between June 2015 and March 2016—that is, between four and thirteen months after Snider gave birth.  Since Snider was not pregnant at any time when she alleges Defendants failed to rehire her, she must plead facts to establish that she was still affected by pregnancy, childbirth or related medical conditions or that the effects of her pregnancy continued to exist in the thoughts and actions of the Defendants.

When Snider was still working for the Defendants, she alleges that Richard Wolfington saw that she was pregnant and gestured to another employee while pointing to his stomach.  (2d Am. Compl. ¶ 16.)  The other employee responded, "that was from before she was interviewed." (*Id.*)  Snider also alleges that Defendants only allowed her to take ten days of leave for her pregnancy, whereas other non-pregnant employees were allowed to take longer leaves of absences.  (*Id.* ¶ 25.)  Snider contends that Defendants had discretion in their leave policy to allow her to take more time off.  (*Id.* ¶ 27.)  She was not offered this additional time, however, and her employment was terminated on the day she gave birth. (*Id.* ¶ 22.)  She then claims that in March 2015, an employee of Defendants told another employee that there must have been "some issue" with Snider because "she was only given [two] weeks and was terminated."  (*Id.* ¶ 29.)

Additionally, Snider alleges that from February through July 2015 she called Defendants and sent requests to be rehired to her position, but her calls were not returned.  (*Id.* ¶ 30.)  She further contends that at some point between February and July 2015, Defendants informed her that they had filled the position.  (*Id.* ¶ 32.)  "Upon information and belief," Snider says Defendants filled the position with a non-pregnant employee.  (*Id.*)

At oral argument, Snider's counsel conceded that plaintiff was not pregnant nor did she have a medically related condition at the time she was applying for rehire.  (Tr. of Oral Arg. 65:14–65:23.)  Counsel contended instead that Defendants failed to rehire Snider because they held her prior pregnancy against her.  (*Id.* at 65:14–65:23; 65:25–66:5.)  Much of Snider's factual allegations seem to pertain more to her *termination*, than her *failure to rehire* claim.  Under Snider's theory, however, these allegations may be viewed as circumstantial evidence of Defendants' motive for their failure to rehire.  Snider has plead, albeit barely, enough facts to raise a reasonable expectation that discovery will reveal the necessary elements of her claim and the motion to dismiss is denied as it pertains to Count I.

## B.

Count II alleges systemic disparate treatment under Title VII.  To present a claim of systemic disparate treatment, Snider must plead facts to suggest that Defendants intentionally had a formal policy of discrimination or a pattern or practice of discriminating against pregnant women.  *See Wheeler v. Pa. Dep't Labor & Indus.*, 2012 WL 1057430, at *6 (E.D. Pa. Mar. 29, 2012) (citing *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 336 (1977)).  A pattern or practice is "more than the mere occurrence of isolated or 'accidental' or sporadic discriminatory acts.  It [must] establish by a preponderance of the evidence that [pregnancy] discrimination was

the company's standard operating procedure—the regular rather than the unusual practice."
*Teamsters*, 431 U.S. at 336.

Snider alleges that Defendants "refused to hire or rehire Plaintiff based on the belief that pregnancy and maternity leave are an inordinate drain on the workplace caused by female employees; that female employees will prioritize family over work; and/or that new mothers belong home with their newborn children."  (*Id.* ¶ 41.)  She also alleges that "there is widespread resistance to the idea that employees should ever become pregnant."  (*Id.* ¶ 45.)

First of all, to the extent that this claim concerns events before June 4, 2015, it is time barred.  Moreover, Snider has not pleaded any facts to support these conclusory allegations or to suggest that Defendants had a formal policy or a pattern or practice of discrimination against pregnant women.  Instead, she only says that Defendants "refused to adopt a non-discrimination policy."  (*Id.* ¶ 42.)  This is not sufficient.  Snider does not plead a pattern or practice of discrimination by pointing to any other pregnant women against whom Defendants discriminated.  *See United States v. Pennsylvania*, 110 F. Supp. 3d 544, 550 (M.D. Pa. 2015) ("it appears well-settled, however, that a pattern or practice of discrimination could be either a pattern of disparate treatment of *a number of individuals*, or the wide-scale application of tests or other neutral factors having disparate impact, or both." (internal quotation omitted) (emphasis added)).

## C.

Count III is a disparate impact claim under Title VII.  "In order to establish a prima facie case of disparate impact discrimination, a plaintiff is required to demonstrate that application of a facially neutral standard has resulted in a discriminatory [ ] pattern." *Newark Branch, NAACP v. Town of Harrison*, 940 F.2d 792, 798 (3rd Cir. 1991); *see also EEOC v. Metal Serv. Co.*, 892 F.2d

341, 348 (3rd Cir. 1990) ("A disparate impact violation is made out when an employer is shown to have used a specific employment practice, neutral on its face but causing substantial adverse impact on a protected group, and which cannot be justified as serving a legitimate business goal of the employer."). "[T]he burden a Title VII plaintiff must meet to survive a motion to dismiss[] is much less onerous." *Ladd v. Boeing Co.*, 463 F. Supp. 2d 516, 523 (E.D. Pa. 2006) (quoting *Powell v. Ridge*, 189 F.3d 387, 394 (3d Cir. 1999), *overruled on other grounds by Alexander v. Sandoval*, 532 U.S. 275 (2001)). "To survive a motion to dismiss, all that the plaintiff must do is plead that a facially neutral practice's adverse effects fall disproportionately on a group protected by Title VII." *Id.* (citing *Powell*, 189 F.3d at 394 (explaining that parties' burdens in a Title VI disparate impact case are the same for Title VII disparate impact case)). A disparate impact claim is subject to Title VII's timing requirements. *See* 42 U.S.C. § 2000e-5(e)(1); *Lewis v. City of Chicago*, 560 U.S. 205, 208 (2010). The time period can run either from the adoption of a policy or from the policy's application. *Lewis*, 560 U.S. at 212.

Snider alleges that Defendants' leave policy, which allowed her to take only ten days off after the birth of her child, has a disparate impact upon pregnant female employees. She alleges nine specific problems with the policy. *See* (2d Am. Compl. ¶ 47). The policy, however, applied to Snider—at the latest—in January of 2015, when she received the alleged "termination letter." Thus, the Title VII limitations period began to run in January. *See Lewis*, 560 U.S. at 212. Snider concedes that any unlawful employment actions before June 3, 2015 are time barred.

**D.**

Count IV alleges retaliation in violation of Title VII. To establish a viable retaliation claim under Title VII, a plaintiff must allege facts to show: (1) she engaged in protected activity; (2) she suffered an adverse employment action; and (3) there was a causal connection between

the protected activity and the adverse employment action.  *See Moore v. City of Philadelphia*, 461 F.3d 331, 340–41 (3d Cir. 2006).

Snider conclusorily alleges (for the first time) in paragraph 52 of her Second Amended Complaint that she "previously opposed the no-maternity-leave policy" and that, because of this opposition, Defendants fired her and failed to rehire her.  The allegations related to her termination are time barred.  Regarding her failure to rehire claim, Snider offers no facts to support her threadbare allegation.  For example, she does not allege how she opposed this policy, to whom she expressed her opposition or whether the people to whom she expressed opposition were involved in the decision not to rehire her.  The Court is not bound to accept as true legal conclusions couched as factual allegations.  *See Iqbal*, 556 U.S. at 678.

## IV.

Snider alleges two claims arising under the FMLA.  Congress enacted the statute in 1993 to "balance the demands of the workplace with the needs of families" and "entitle employees to take reasonable leave for medical reasons." 29 U.S.C. § 2601(b)(1–2). The FMLA grants up to "12 workweeks of leave during any 12-month period" to individuals it deems "eligible employees" to allow such employees to leave work for one of several reasons, including the birth of a child.  *See id.* § 2612(a).  "The Act contains two relatively distinct types of provisions:  a series of prescriptive substantive rights for eligible employees, often referred to as the 'entitlement' or 'interference' provisions which set floors for employer conduct, 29 U.S.C. §§ 2612, 2614(a)(1); and protection against discrimination based on the exercise of these rights, often referred to as the 'discrimination' or 'retaliation' provisions, 29 U.S.C. § 2615(a)(1-2); 29 C.F.R. § 825.220(c)."  *Sinacole v. iGate Capital*, No. 2:04cv0921, 2006 WL 3759744, at *5 (W.D. Pa. Dec. 19, 2006), *aff'd*, 287 F. App'x 993 (2009) (citing *Callison v. City of Philadelphia*,

430 F.3d 117, 119 (3d Cir. 2005)).”  Snider alleges both FMLA retaliation and interference claims.

## A.

Count V is the retaliation claim.  To survive a motion to dismiss, Snider must allege facts to show: (1) she invoked her FMLA right to leave; (2) she suffered an adverse employment decision; and (3) the adverse action was causally connected to her invoking her right to FMLA leave.  *See Lichtenstein v. Univ. of Pitt. Med. Ctr.*, 691 F.3d 294, 301–02 (3d Cir. 2012).  An employee need not expressly assert or even mention her rights under the FMLA to invoke her rights for the purposes of an FMLA retaliation claim.  *Lichtenstein*, 691 F.3d at 303.

Snider and Defendants both agree that Snider was not an FMLA eligible employee because she failed to work at least 1,250 hours and was not employed by Defendants for at least 12 months.  *See* 29 U.S.C. § 2611(2)(A); *Erdman v. Nationwide Ins. Co.*, 582 F.3d 500, 504 (3d Cir. 2009).  Snider argues, however, that eligibility is not a prerequisite to bring a retaliation claim, and even if it is, the doctrine of equitable estoppel preserves her ability to bring FMLA related claims notwithstanding her ineligibility.

## i.

In contending that eligibility is not required to bring an FMLA retaliation claim, she relies primarily on dicta in *McArdle v. Town of Dracut*, 732 F.3d 29, 36 (1st Cir. 2013).  (ECF No. 24, at 4).  The First Circuit, however, expressly avoided deciding that issue because it concluded that the FMLA was irrelevant to the merits of its case.  *McArdle*, 732 F.3d at 36.[6] Next, Snider relies on *Johnson v. Dollar General*, 880 F. Supp. 2d 967 (N.D. Iowa 2012).  The

---

[6]   “In any event, in this case we need not decide whether an ineligible employee may never bring a retaliation claim under the FMLA if he is fired merely for asking if he is eligible.  Here, the only reasonable reading of the record is that McArdle was not fired for asking to take FMLA leave.”  *McArdle*, 732 F.3d at 36.

*Johnson* court did in fact hold that an ineligible employee could state a claim for FMLA

retaliation. *Id.* at 992.  No circuit, however, has adopted the *Johnson* court's position though

many have come to the opposite conclusion.  *See Walker v. Elmore Cty. Bd. of Educ.*, 379 F.3d

1249, 1253 (11th Cir. 2004) ("There can be no doubt that the request—made by an ineligible

employee for leave that would begin when she would still have been ineligible—is not protected

by the FMLA);[7] *see also Hill v. Walker*, 737 F.3d 1209, 1215 (8th Cir. 2013) (same); *Basden v.*

*Professional Transp., Inc.*, 714 F.3d 1034, 1039 (7th Cir. 2013) (relying on *Walker*, 379 F.3d at

1253); *Amsel v. Tex. Water Dev. Bd.*, 464 F. App'x 395, 401 n.7 (5th Cir. 2012) (same).  *But see*

*McArdle*, 732 F.3d at 36 (declining to decide the issue); *Wilkins v. Packerware Corp.*, 260 F.

App'x 98, 102–103 (10th Cir. 2008) (describing the issue as "contestable" but not taking a

position).[8]

　　　　Finally, Snider cites *Beffert v. Pa. Dept. of Public Welfare*, No. 05-43, 2005 WL 906362,

at *3 (E.D. Pa. April 18, 2005) allowing a non-eligible employee to bring an FMLA retaliation

claim.  *Beffert*, however, addressed a narrower issue:  whether non-FMLA-eligible "employees

who give . . . notice of leave to commence once they become eligible employees" are protected

from retaliation.  *Id.* at *2.  The court concluded that "[s]ince the FMLA contemplates notice of

leave in advance of becoming an eligible employee, the statute necessarily must protect from

---

[7]　　　After *Walker*, the Eleventh Circuit held that the FMLA does protect a "pre-eligibility request for post-eligibility maternity leave." *Pereda v. Brookdale Senior Living Communities, Inc.*, 666 F.3d 1269, 1272 (11th Cir. 2012).  This decision does not help Snider because she did not make such a request—her maternity leave would have occurred *before* she was FMLA eligible.

[8]　　　Snider also relies on *Potts v. Franklin Elec. Co.*, No. 05-433, 2006 WL 2474964 (E.D. Okla. Aug. 24, 2006).  *Potts* took a similar position to *Johnson*, but cited to the district court's decision in *Walker* for the proposition that the "FMLA protects the attempt to exercise a right; thus [it] can protect someone who mistakenly asks for FMLA leave although they may be ineligible." *Id.* at *3.  But the Eleventh Circuit in *Walker* expressly rejected this reasoning while only affirming the district court's ultimate outcome. *See Walker*, 379 F.3d 1249, 1252 ("Contrary to the district court, we hold that Walker's claim fails at the first step in this analysis because her request for leave was not protected by the FMLA.").  Thus, the *Potts* court based its decision in part on an overruled district court decision.

retaliation those currently non-eligible employees who give such notice of leave to commence once they become eligible employees." *Id.* at *3. *Beffert* does not help Snider either; again, her maternity leave would have occurred *before* she became FMLA eligible.

The Third Circuit has not addressed this issue, but district courts in the circuit have agreed with *Walker*. *See, e.g.*, *McDevitt v. Am. Expediting Co.*, No. 15-498, 2015 WL 4579024, *3 (E.D. Pa. July 30, 2015) ("Because the Act only confers rights on 'eligible employees,' only 'eligible employees' may ordinarily bring a cause of action for retaliation or interference under the Act. Consequently, in order to state a valid FMLA claim for either interference or retaliation, a complaint must plausibly allege that the plaintiff is an 'eligible employee' under the Act."); *Kiniropoulos v. Northampton Cty. Child Welfare Serv.*, 917 F. Supp. 2d 377, 390 (E.D. Pa. 2013) (dismissing FMLA retaliation claim because plaintiff failed to plead that he was an "eligible employee"); *Bowman v. St. Luke's Quakertown Hosp.*, No. 12-797, 2012 WL 6527402, *5 (E.D. Pa. Dec. 13, 2012) ("To state a claim under the FMLA, a complaint must at a minimum contain allegations that, within the meaning of the FMLA, the defendant is an 'employer' and the plaintiff employee is an eligible employee." (internal quotations omitted)). Snider is not an eligible employee.

### ii.

Snider next contends that even if she is not an eligible employee, the doctrine of equitable estoppel preserves her ability to assert a retaliation claim. The Third Circuit has endorsed the use of the equitable estoppel doctrine in the context of the FMLA—albeit in a one page, unpublished decision. *See Leese v. Adelphoi Vill., Inc.*, 516 F. App'x 192, 193 (3d Cir. 2013) ("[T]he District Court correctly concluded that equitable estoppel is available in the FMLA context. . . ."). To bring a claim of equitable estoppel under the FMLA, Snider must plead facts to establish: "(1) a

15

misrepresentation by another party; (2) which she reasonably relied upon; (3) to her detriment." *Leese*, 516 F. App'x at 194 (quoting *United States v. Asmar*, 827 F.2d 907, 912 (3d Cir. 1987)). Snider has failed to plead facts sufficient to bring an equitable estoppel claim because she has failed to establish a misrepresentation by Defendants.

"The first element necessary to establish equitable estoppel requires a 'definite misrepresentation,' but need not entail the intent to deceive." *See Palan v. Inovio Pharm.*, No. 15-3327, 2016 WL 3440448, at *3, n.8 (3d Cir. June 23, 2016) (citing *Minard v. ITC Delacom Commc'ns, Inc.*, 447 F.3d 352, 358–59 (5th Cir. 2006)). To establish misrepresentation, "the party requesting the estoppel must show that the defendants have engaged in *affirmative conduct* . . . that was designed to mislead or was unmistakably likely to mislead a plaintiff." *Id.* at *3 (quoting *Redman v. U.S. W. Bus. Res., Inc.*, 153 F.3d 691, 695 (8th Cir. 1998) (internal quotations omitted) (emphasis added)).

The Third Circuit recently analyzed the misrepresentation element of equitable estoppel in an FMLA case. *See Palan*, 2016 WL 3440448, at *3. In *Palan* an employee sued his employer alleging FMLA retaliation and interference. Doctors diagnosed Palan with diverticulitis and told him he urgently needed surgery. *Id.* at *1. He met with his employer to take leave from work but the FMLA was never mentioned by either party. While on leave, Palan was fired. Palan was not an eligible employee under the FMLA because defendants employed fewer than the required number of employees. *See* 29 U.S.C. § 2611(2)(B)(ii). Palan argued that equitable estoppel applied because defendants had voluntarily implemented an FMLA policy since its employer handbook mentioned FMLA compliance. Additionally, defendants had "assured Palan that he should not worry and that his job would be there upon his return." *Id.* at *3, n.8.

The Third Circuit held that Palan had established a misrepresentation because of the misleading employee handbook, but *not* because of defendant's reassuring statements. *Id.* These statements did not constitute a misrepresentation "because they d[id] not address Palan's FMLA eligibility." *Id.* The district court had made the same conclusion, reasoning that "[w]hile the statements may have, ultimately turned out to be untrue, they did not concern whether Palan was FMLA eligible." *Palan v. Inovio Pharm. Inc.*, No. 14-5054, 2015 WL 5042836, at *3, n.2 (E.D. Pa. Aug. 26, 2015).

As an initial matter, Defendants' failure to advise Snider of her FMLA rights (or post FMLA information) does not satisfy the misrepresentation element of equitable estoppel because it is not affirmative conduct. *See Palan*, 2015 WL 5042836, at *3; *see also Redman*, 153 F.3d at 695. The only thing Snider points to as a misrepresentation is Harper's response of "Oh, OK" after Snider told her she was pregnant. (*Id.* at 54.) At oral argument, Snider's counsel contended that these two words could be interpreted to mean that Snider did not have to worry and that she would be able to take leave. (Tr. of Oral Arg. 74:7–74:19.) The issue is not how Snider could or could not have "translated" Harper's remarks; "Oh, OK" is not a misrepresentation of anything. Regardless, even if these two words could be interpreted in this context as counsel suggest, Harper's purported reassurance did not concern whether Snider was FMLA eligible. *See Palan*, 2015 WL 5042836, at *3, n.8. It is not plausible that Snider, in the complete absence of any mention of the FMLA, could have reasonably interpreted Harper to be telling her she was FMLA eligible. Because the allegations in the complaint are insufficient to allege misrepresentation, Snider's equitable estoppel theory—and thus her FMLA retaliation claim—fails.

**B.**

Count VI purports to state a claim for FMLA interference.  An employer may be held liable for interference under the FMLA for failing to provide proper notice in accordance with the Department of Labor's regulations.  *See* 29 C.F.R. § 825.300(e).  The notice requirements are meant to "ensure that employers allow their employees to make informed decisions about leave." *Conoshenti v. Pub. Serv. Elec. & Gas Co.*, 364 F.3d 135, 144 (3d Cir. 2004).  However, in order to successfully state a claim of interference based on the employer's noncompliance with the FMLA's notice requirements, an employee must show that he or she has suffered prejudice.  *See Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 82 (2002). "Prejudice occurs when the employer's failure to advise the plaintiff of his FMLA rights 'rendered him unable to exercise [the right to leave] in a meaningful way, thereby causing injury.'"  *Lupyan v. Corinthian Coll. Inc.*, 761 F.3d 314, 318–19 (3d Cir. 2014) (quoting *Conoshenti*, 364 F.3d at 143).  "An interference action is not about discrimination, it is only about whether the employer provided the employee with the entitlements guaranteed by the FMLA."  *Id.* at 120.

FMLA interference claims unquestionably require the employee to be eligible under the statute.   The first prong of an interference claim requires an employee to show she was "*entitled to benefits under the FMLA*."  *Callison*, 430 F.3d at 119 (emphasis added).  Moreover, the Third Circuit has reasoned, at least in the FMLA interference context, that the "FMLA does not provide a private right of action for any employee, but rather only for eligible employees."  *Sinacole v. iGate Capital*, 287 F. App'x 993, 996 (3d Cir. 2008).  An ineligible employee is thus "precluded . . . from proffering facts sufficient to establish her interference claim."  *Id.*  Snider does not dispute this reasoning, but instead argues once more that equitable estoppel saves her claim. (Pl.'s Br. at 3.)

As discussed above, however, Snider has failed to state an equitable estoppel claim because she cannot show that the Defendants misrepresented anything.  Additionally, in the context of her interference claim, Snider cannot show that she suffered a detriment.  The Third Circuit rejected a similar argument in *Sinacole*.  287 F. App'x at 993.  In *Sinacole*, a former employee, who had requested FMLA leave for her pregnancy, brought an interference claim because defendants never responded to her request.  *Id.* at 994.  The plaintiff, however, was not eligible for FMLA leave.  *Id.*  Assuming arguendo that defendant's silence was sufficient misrepresentation, the Third Circuit concluded that the plaintiff still failed to show that she had suffered a detriment.  *Id.* at 995–96.  The court rejected plaintiff's argument that she could have delayed taking FMLA leave until a time when she was eligible, because it was not possible for her to become eligible before the birth of her child.  *Id.* at 995.  Snider's claim fails for the same reasons.

## V.

Snider's remaining counts allege violations of Pennsylvania common law.  Count VII alleges negligent misrepresentation, (2d Am. Compl. ¶ 70), and Count VIII asserts a wrongful termination claim, (2d Am. Compl. ¶ 80).  For the Court to exercise supplemental jurisdiction over these claims, the state and federal claims must "derive from a common nucleus of operative facts" and the claims must be "such that [a plaintiff] would ordinarily be expected to try them all in one judicial proceeding." *Lyons v. Whisman*, 45 F.3d 758, 760 (3d Cir. 1995) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966)).  The test to determine whether claims arise from a "common nucleus of operative facts" is "not self-evident" and is fact specific.  *Id.*  The Third Circuit has identified two extremes in the supplemental jurisdiction analysis:  "district courts will exercise supplemental jurisdiction if the federal and state claims are merely

alternative legal theories of recovery based on the same acts" and the courts "have refused to exercise supplemental jurisdiction over state claims totally unrelated to a cause of action under federal law." *Id.* at 761 (citations omitted).  Here, Snider's claims are alternative legal theories of recovery based on the same acts.

**A.**

"Negligent misrepresentation requires proof of: (1) a misrepresentation of a material fact; (2) made under circumstances in which the misrepresenter ought to have known its falsity; (3) with an intent to induce another to act on it; and; (4) which results in injury to a party acting in justifiable reliance on the misrepresentation." *Bortz v. Noon*, 729 A.2d 555, 561 (Pa. 1999).

Common law negligent misrepresentation requires an actual misrepresentation on the part of the defendant.   *Cooper v. Sirota*, 37 F. App'x 46, 48 (3d Cir. 2002); *see Partners Coffee Co., LLC v. Oceana Servs. & Prods. Co.*, 700 F. Supp. 2d 720, 734 (E.D. Pa. 2010) ("Negligent misrepresentation claim requires an actual misrepresentation as opposed to assumptions on the part of the recipient."); *see also State Coll. Area Sch. Dist. v. Royal Bank of Canada*, 825 F. Supp. 2d 573, 584 (M.D. Pa. 2011) (quoting *Partners Coffee Co.*, 700 F. Supp 2d at 734).

Omissions can be actionable under Pennsylvania law if there is a duty to disclose.  *Brown v. Johnson &* Johnson, 64 F. Supp. 3d 717, 726 (E.D. Pa. 2014); *Partners Coffee*, 700 F. Supp. 2d at 734 ("[A] claim of negligent misrepresentation presumes a duty to disclose . . . ."); *see also Weisblatt v. Minn. Mut. Life Ins. Co.*, 4 F. Supp. 2d 371, 380 (E.D. Pa. 1998).  Snider alleges that Defendants should have disclosed her FMLA status to her at the time she was hired, when she told Defendants that she was pregnant.  She argues that their failure to do so constitutes negligent misrepresentation.  But there was no misrepresentation because, at the time she was hired, she was not requesting leave—she simply told them of her pregnancy.  When she did request leave

in November or December 2014, Defendants informed her that she was not eligible. The letter attached to Snider's response makes this clear. *See* (ECF No. 24, Ex. A).  There cannot be a negligent misrepresentation claim based on an omission on these facts.

Again, the only affirmative misrepresentation Snider alleges is Harper's statement "Oh, OK" in response to Snider informing her she was pregnant.  There is no plausible way to construe this as a misrepresentation of a material fact.

**B.**

Finally, Snider alleges a wrongful discharge claim in violation of Pennsylvania public policy.  To establish a claim for wrongful discharge in the at-will employment context, Snider must show that her termination "threaten[ed] clear mandates of public policy."  *Weaver v. Harpster*, 975 A.2d 555, 563 (Pa. 2009) (quoting *Clary v. Advanced Comp. Applications, Inc.*, 559 A.2d 917, 918 (Pa. 1989).  This exception is granted in "only the most limited of circumstances."[9] *Id.* at 562–63 (internal quotation and citation omitted).  "Although the parameters of the public policy exception are not explicitly defined, the Pennsylvania courts generally have limited its application to situations in which an employer: (1) requires an employee to commit a crime; (2) prevents an employee from complying with a statutorily imposed duty; and (3) discharges an employee when specifically prohibited from doing so by statute."  *Brennan v. Cephalon, Inc.*, 298 F. App'x 147, 150 (3d Cir. 2008) (citing *Hennessy v. Santiago*, 708 A.2d 1269, 1273 (Pa. Super. Ct. 1998)); *see also Spyridakis v. Riesling Group, Inc.*, 398 F. App'x 793, 799 (3d Cir. 2010) (quoting *Hennessy*, 708 A.2d at 1273); *Fraser v. Nationwide Mut. Ins. Co.*, 352 F.3d 107, 111 (3d Cir. 2003) (same).

---

[9]    *See, e.g., Field v. Phila. Elec. Co.*, 565 A.2d 1170 (Pa. Super. Ct. 1989) (plaintiff discharged after reporting nuclear safety violations); *Hunter v. Port Auth.*, 419 A.2d 631 (Pa. Super. Ct. 1980) (plaintiff denied public employment on the basis of a prior conviction for which he had been pardoned); *Reuther v. Fowler & Williams, Inc.*, 386 A.2d 119 (Pa. Super. Ct. 1978) (plaintiff discharged for fulfilling jury duty).

Moreover, in order to "set forth a claim for wrongful discharge a Plaintiff must do more than show a possible violation of a federal statute that implicates only her own personal interest." *McLaughlin v. Gastrointestinal Specialists, Inc.*, 750 A.2d 283, 289 (Pa. 2000); *see also Howell v. PPL Servs. Corp.*, 232 F. App'x 111, 113–14 (3d Cir. 2007).  "[A] bald reference to a violation of a federal regulation, without any more articulation of how the public policy of this Commonwealth is implicated, is insufficient to overcome the strong presumption in favor of the at-will employment relation."  *Id.* at 290; *see also Diehl v. Admin. Offices of Pa. Courts*, No. 4:10-CV-00071, 2010 WL 8939137, at *12 (M.D. Pa. Sept. 13, 2010) (finding that FMLA violation did not qualify as public policy exception to Pennsylvania's at-will system).  Snider claims that Defendants' supposed violations of the FMLA satisfy the public policy exception. They do not.

## VI.

Under Federal Rule of Civil Procedure 15(a), "courts may grant . . . amendments 'when justice so requires.'" *Fraser v. Nationwide Mut. Ins. Co.*, 352 F.3d 107, 116 (3d Cir. 2004) (citing Fed. R. Civ. P. 15(a)). While Rule 15 states that "leave to amend should be 'freely given,' a district court has discretion to deny a request to amend if it is apparent from the record that (1) the moving party has demonstrated undue delay, bad faith or dilatory motives, (2) the amendment would be futile, or (3) the amendment would prejudice the other party." *Id.*; *see also Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002) (citing *Foman v. Davis*, 371 U.S. 178 (1962)). "When a party fails to take advantage of previous opportunities to amend, without adequate explanation, leave to amend is properly denied." *Arthur v. Maersk, Inc.*, 434 F.3d 196, 204 (3d Cir. 2006). The Third Circuit Court of Appeals has left the decision of whether

to grant or deny a motion for leave to amend within the sound discretion of the district court.

*Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 272 (3d Cir. 2001) (citations omitted).

Snider has had ample opportunity to amend her complaint and further amendment would be futile.  The Court dismisses Counts II, III, IV, V, VI, VII, and VIII with prejudice.  An appropriate order follows.

BY THE COURT:


*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.